# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARK PHILLIP LAY | CIVIL ACTION |
| VERSUS | NO. 09-3349 |
| THE MEDICAL STAFF, ET AL. | SECTION "C" (1) |

## ORDER AND REASONS

Plaintiff, Mark Phillip Lay, filed this *pro se* civil action pursuant to 42 U.S.C. § 1983 claiming that he received inadequate medical care at the St. Tammany Parish Jail. The only remaining defendant is Dr. French.[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[2]

In his complaint, plaintiff stated his claim as follows:

I was called to sick call by Medical for a genital problem I had that I self mecad myself. 10 days early. When I was there & address a issue with my eye that they never followed up with my treatment after being in Bogalusa hospital. Dr. French didn't want to treat me the way that was issued to me. He keep poking around my eye it was painful. He keep putting his hand in my eye it was irritated. I couldn't blink. They put cream in my eye but that's it they fooling off my medicine I needed. The doctors don't really care that I can't see out my eyes. Now I blind cause they refuse to treat me correct.[3]

---

[1]  Plaintiff's claims against "the Medical Staff" were dismissed on October 9, 2009. Rec. Doc. 18.

[2]  Rec. Doc. 24.

[3]  Rec. Doc. 1, p. 5.

Dr. French has filed a motion for summary judgment.[4] Plaintiff requested and was granted an extended period of time to file a memorandum in opposition to that motion;[5] however, that extended deadline has now passed, and no such memorandum was ever filed.

The principal purpose of Fed.R.Civ.P. 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific

---

[4] Rec. Doc. 30.

[5] Rec. Docs. 32 and 33.

2

evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

In his motion for summary judgment, Dr. French argues that the claims against him must be dismissed because plaintiff failed to exhaust his administrative remedies. For the following reasons, the Court finds that Dr. French is correct.[6]

The Prison Litigation Reform Act of 1995 ("PLRA"), as amended, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). The United States Fifth Circuit Court of Appeals has noted that "[q]uibbles about the nature of a prisoner's complaint, the type of remedy sought, and the sufficiency or breadth of prison grievance procedures were laid to rest in Booth." Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001). Exhaustion is *mandatory* in cases covered by § 1997e(a). Porter v. Nussle, 534 U.S. 516, 524 (2002). Moreover, an inmate's "release during the pendency of the suit does not relieve him the obligation to comply

---

[6] Because the Court agrees that this lawsuit must be dismissed based on plaintiff's failure to exhaust his administrative remedies, the Court need not address the alternative ground for dismissal asserted by Dr. French in his motion.

3

with 42 U.S.C. § 1997e." Williams v. Henagan, 595 F.3d 610, 619 (5th Cir. 2010); Gregory v. Miller, Civ. Action No. 05-343, 2006 WL 1985922, at *2 n.6 (E.D. La. June 13, 2006).

In support of his motion, Dr. French submitted the affidavit of Lieutenant David Hanson. In that affidavit, Hanson summarized the St. Tammany Parish Jail's administrative remedy procedure:

> 4. The St. Tammany Parish Jail implemented an Inmate Complaint Procedure in place and available to all inmates at the St. Tammany Parish Jail at the time the events in the above captioned lawsuit occurred.
>
> 5. The Inmate Complaint Procedure was implemented in order for inmates to try to resolve their problems before filing a grievance through the jail's administrative remedy procedure.
>
> ....
>
> 7. If an inmate's complaint is not remedied through the inmate complaint procedure, the inmate may then proceed to the jail's official grievance process, which is called the Administrative Remedy Procedure.
>
> 8. The St. Tammany Parish Jail has an administrative grievance process called the Administrative Remedy Procedure (ARP) in place and available to all inmates incarcerated at the St. Tammany Parish Jail and was available to all inmates at the time the events alleged in the above captioned lawsuit occurred.
>
> 9. All inmates are entitled to use the jail's administrative remedy procedure, including Department of Corrections inmates, parish jail inmates, and pre-trial detainees.
>
> 10. A summary of the jail's administrative remedy procedure may be found in the St. Tammany Parish Jail Inmate Handbook that is given to every inmate who is booked into the St. Tammany Parish Jail....
>
> 11. A copy of the complete administrative remedy procedure may also be found in the St. Tammany Parish Jail law library wherein access to the procedure is available to all inmates and was available to all inmates.

12. Both the Inmate Complaint Procedure and the Administrative Remedy Procedure were posted in every housing unit of the St. Tammany Parish Jail.

13. The complaint form and grievance forms were available in every housing unit at the St. Tammany Parish Jail and were made easily accessible to all inmates.

14. An inmate could also ask any jail deputy for the complaint or grievance forms.

15. To initiate the grievance process, an inmate must fill out the inmate grievance form, which is made easily accessible to all inmates in the jail. In lieu of the form, an inmate may submit a written communication containing the words "This is a grievance though the ARP."

16. Under the grievance procedure available at the time of the alleged incident, a grievance must be filed within ninety (90) days from the date of the incident giving rise to the grievance occurred. Any grievance filed more than ninety (90) days after the incident is rejected as untimely.

17. As the Inmate Affairs Director, I am the First Level Respondent in the grievance process. As the First Level Respondent, I must respond to the inmate's grievance within fifteen (15) days from the date the request is referred to me. This step is designated as the First Step Review.

18. If an inmate is not satisfied with the results of the First Step Review, the inmate may appeal to the Warden within five (5) days of the inmate's receipt of the response by the First Level Respondent. This step is designated the Second Step Review. The Warden has twenty-five (25) working days to reply to the appeal.

19. If an inmate does not like the results of the Second Step Review, the inmate may appeal to the Sheriff within five (5) days of the inmate's receipt of the reply. The Sheriff has forty (40) working days to reply to the appeal.

20. If the inmate is not satisfied with the results of this final level of review of the jail's administrative grievance process, he may then file suit.

21. The inmate, Warden, or Sheriff may request a five (5) working day extension of time in responding to the grievance.

22. If an inmate does not receive a response to a grievance or appeal within the time allowed by the First Level Respondent, Warden or the Sheriff, an inmate would still be required to follow through to the next step of the grievance process.

....

24. Any complaint or grievance submitted by an inmate concerning medical treatment is referred directly to the medical department and a member of the jail medical staff promptly responds to the complaint or grievance.

25. If an inmate is not satisfied with the response to the grievance given by the medical staff, the inmate may appeal to the Warden and if he is still not satisfied with the response, he may then appeal to the Sheriff.

26. Inmate Mark Phillip Lay never filed any grievance concerning medical treatment as required under the St. Tammany Jail's Administrative Remedy Procedure and therefore, never appealed any such grievance to the Warden or Sheriff.

[27.] Inmate Mark Phillip Lay did not exhaust all his administrative remedies as required by the St. Tammany Parish Jail Administrative Remedy Procedure concerning his denial of medical treatment claim prior to filing his lawsuit.[7]

Dr. French also submitted an affidavit from Dr. Richard Inglese, the Medical Director of the St. Tammany Parish Sheriff's Office. Dr. Inglese stated:

5. I have personally reviewed the St. Tammany Parish Jail Medical Records of inmate Mark Phillip Lay, and the records in the medical department of the St. Tammany Parish jail concerning grievances under the Administrative Remedy Procedure.

6. Inmate Mark Phillip Lay never submitted a grievance concerning the medical treatment he was receiving at the St. Tammany Parish Jail.[8]

---

[7] Rec. Doc. 30-4, Affidavit of Lieutenant David Hanson.

[8] Rec. Doc. 30-5, Affidavit of Dr. Richard Inglese.

Despite being granted an extended period of time to do so, plaintiff has never responded to the motion for summary judgment or in any way rebutted this evidence regarding his failure to exhaust. Moreover, there is no evidence in the record indicating that plaintiff exhausted his remedies. At best, the record reflects that plaintiff purportedly filed informal complaints, thereby perhaps complying with the first part of the bifurcated grievance process.[9] Plaintiff also stated in the federal complaint that he "present[ed] the facts relating to this complaint in the prisoner grievance procedure"; however, he tellingly failed to answer the follow-up question concerning whether he "exhausted or completed all steps in the procedure, including appeals."[10] As noted, Dr. French disputes that a grievance was even filed.

That disputed factual issue, however, is ultimately immaterial. Even if plaintiff submitted the informal complaints and a first-step grievance as he alleges, it is *undisputed* that he proceeded to federal court rather than to the second and third steps of the jail's grievance procedure. It is that fact which is determinative in this case. The United States Fifth Circuit Court of Appeals has noted: "'Exhaust' is defined as 'to take complete advantage of (legal remedies).'" Underwood v. Wilson, 151 F.3d 292, 294 (5th Cir. 1998) (quoting Webster's New Int'l Dictionary 796 (3rd ed. 1981)). Therefore, a plaintiff's administrative remedies are not exhausted unless he has pursued his grievance through the *conclusion* of a multi-step administrative remedy procedure. Wright v.

---

[9] Plaintiff attached to his federal complaint a copy of an administrative complaint allegedly submitted to prison authorities on March 17, 2009. Rec. Doc. 1, p. 7. He also later submitted to the Court an administrative complaint form dated March 2, 2009, as well as another unidentified document apparently dated March 18, 2009. Rec. Doc. 22, pp. 2-5.

[10] Rec. Doc. 1, p. 3, § II(B) and (C)(2).

Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001); see also Hemphill v. Inglese, 359 Fed. App'x 537, 540 (5th Cir. 2010) ("[C]omplying with the first step of an administrative grievance procedure will not suffice to exhaust administrative remedies if the grievance procedure contemplates additional steps."). Accordingly, the fact that plaintiff may have initiated the procedure is simply insufficient to constitute exhaustion, because he subsequently abandoned the process rather than pursue it to its conclusion.

This Court is not unsympathetic to the plight of prisoners who in good faith attempt to navigate the sometimes labyrinthine administrative remedy procedures. Nevertheless, the fact remains that Congress has provided that exhaustion of such remedies is required. If the federal courts were to allow inmates to abandon the administrative procedure in the midst of the process, the clear intent of Congress would be thwarted. The United States Supreme Court has noted:

> Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All "available" remedies must now be exhausted; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." ...
> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might "filter out some frivolous claims." And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Porter v. Nussle, 534 U.S. 516, 524-25 (2002) (citations omitted).

Because plaintiff did not pursue his administrative remedies to their completion, thereby giving the Warden and the Sheriff a fair opportunity to consider and possibly resolve plaintiff's claims against Dr. French, it is not appropriate for this Court to consider those claims.

Accordingly, it is **ORDERED** that Dr. French's motion for summary judgment is **GRANTED** and that the claims against him are dismissed without prejudice, but with prejudice for the purpose of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915, based on plaintiff's failure to exhaust his administrative remedies.[11]

New Orleans, Louisiana, this eighth day of June, 2010.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] If an inmate files in federal court an *in forma pauperis* complaint containing claims that have not been exhausted through available administrative remedies, those claims should be dismissed without prejudice, but with prejudice for the purpose of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915. See Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998). Plaintiff filed this lawsuit *in forma pauperis*. Rec. Docs. 2 and 3.